UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YA II PN, LTD.,<br><br>                    Plaintiff,<br><br>-against-<br><br>OSIRIUS GROUP, LLC and MILLER, CANFIELD, PADDOCK & STONE, P.L.C.,<br><br>                    Defendants. | Civil Action No.:  23-cv-_____<br><br>**COMPLAINT** |

Plaintiff YA II PN, Ltd. ("Plaintiff" or "YA"), by and through its attorneys, Gibbons P.C., for its Complaint against Defendants Osirius Group, LLC ("Osirius") and Miller, Canfield, Paddock & Stone, P.L.C. ("Miller Canfield") (collectively, "Defendants"), states as follows:

## NATURE OF ACTION

1. This action seeks to recover damages for Defendants' willful disregard of Plaintiff's prior perfected security interests in the assets of non-party Ideanomics, Inc. ("Ideanomics") in connection with Osirius's attempts as an unsecured creditor to collect on a default judgment against Ideanomics.  To that end, Miller Canfield (led by attorney Gerald J. Gleeson, II) filed suit against Ideanomics, in which Osirius obtained its default judgment against Ideanomics for non-payment of a debt.  *Osirius Group, LLC v. Ideanomics, Inc.*, No. 2:23-cv-10943 (E.D. Mich.) (the "Ideanomics Action," and the "Ideanomics Court").  Osirius had knowledge of Plaintiff's prior perfected security interest in Ideanomics' assets (the "Assets") and, through the course of its representation of Osirius in the Ideanomics Action, Miller Canfield and Mr. Gleeson additionally uncovered that same fact.  Yet, in the face of Plaintiff's perfected priority as the senior lienholder of the Assets, Defendants—notwithstanding Osirius's inferior

interest—purposefully flouted Plaintiff's senior lienholder rights and wrongfully exercised dominion over the Assets, to the exclusion of Plaintiff's rights.

2.  Miller Canfield's misconduct, through Mr. Gleeson's actions and inactions, was sufficiently egregious as to constitute separate causes of action from that of its client, and amounted to a fraud on the Ideanomics Court.  Indeed, Miller Canfield's malfeasance sunk well below the mere representation of Osirius's interests and instead breached well-established attorney norms and ethical obligations.  Courts have a duty to deter such immoral practices.  Not only did Miller Canfield and Mr. Gleeson deliberately spurn their duty to inform senior creditors of Osirius's anticipated disposition of Ideanomics' Assets, they knowingly contravened, for example, Rule of Professional Conduct 3.3 (Candor to the Tribunal) in their failure to inform the Ideanomics Court of all known material facts (i.e., Plaintiff's prior perfected security interests in the Assets).

3.  As more fully stated below, Plaintiff accordingly asserts claims against Defendants for conversion, tortious interference with contract, tortious interference with prospective economic advantage, aiding abetting conversion, and unjust enrichment.

## PARTIES, VENUE, AND JURISDICTION

4.  Plaintiff is a Cayman Islands exempt limited partnership, with its principal place of business located at 1012 Springfield Avenue, Mountainside, New Jersey 07092.

5.  Defendant Osirius is a Delaware limited liability company, with its principal place of business located at 725 S. Adams Road #205, Birmingham, Michigan 48009.

6.  Defendant Miller Canfield is professional service limited liability company, authorized to do business in the State of New York (domiciled in New York County), pursuant to

§ 1306 of the New York Limited Liability Company Law, with offices at 1562 First Avenue #267, New York, New York 10028.

7. Non-party Mr. Gleeson is an attorney employed by Miller Canfield.

8. Non-party Ideanomics is a Nevada corporation, with its principal place of business located at 1441 Broadway Street, Suite 5116, New York, New York 10018.

9. This Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332(a) because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.

10. Venue is proper in this judicial district because it is where a substantial part of the events or omissions giving rise to Plaintiff's claims occurred, as the Assets, Miller Canfield, and Ideanomics are all based in the Southern District of New York.

11. This Court may exercise personal jurisdiction over Defendants because they committed tortious acts causing injury to property (the Assets) within the State. Further, all of the tortiously-breached governing security agreements were entered into in New York, contemplate performance in New York, and require that any suit, claim, action, litigation, or proceeding thereunder shall be brought in a court within the State of New York.

## FACTS

### PLAINTIFF AS PERFECTED FIRST-PRIORITY SENIOR LIENHOLDER

12. Plaintiff is an investment fund that is a lender to Ideanomics.

13. As a part of Plaintiff's investment activities, Plaintiff and Ideanomics entered into a lending relationship centered in New York. Specifically, Ideanomics and its guarantors entered into: (1) a Secured Debenture Purchase Agreement, dated October 25, 2022, by and between Ideanomics and Plaintiff (as amended by that certain First Amendment to Secured Debenture

Purchase Agreement, dated as of March 30, 2023, that certain Second Amendment to Secured Debenture Purchase Agreement, dated as of April 17, 2023, that certain Third Amendment to Secured Debenture Purchase Agreement, dated as of May 1, 2023, and that certain Fourth Amendment to Secured Debenture Purchase Agreement, dated as of July 14, 2023), issuing certain debentures in favor of Plaintiff (as agent for itself) in the aggregate original principal amount of $7,234,057.61; (2) a Pledge Agreement, dated as of October 25, 2022, by and among Ideanomics, the other guarantors party thereto from time to time, and Plaintiff; (3) a Security Agreement, dated as of November 2, 2022, by and among Ideanomics, the other guarantors party thereto from time to time, and Plaintiff; (4) an Issuer Control Agreement, dated as of November 2, 2022, by and among Ideanomics, the other guarantors party thereto from time to time, and Plaintiff; (5) an Omnibus Amendment, dated as of May 4, 2023, by and among Ideanomics, the other guarantors party thereto from time to time, Plaintiff, and Timios Acquisition, LLC; and (6) a Pledge Certificate (collectively, the "Security Agreements"). The Security Agreements are attached hereto as **Exhibit 1**.

14. Pursuant to certain assignments, Plaintiff is the agent for itself with respect to the obligations under the notes as secured obligations under the governing Security Agreements.

15. Plaintiff perfected its security interest in Ideanomics' Assets and each of the guarantors.

16. According to UCC searches in Nevada against Ideanomics, Plaintiff has a perfected first-priority lien over substantially all of the assets of Ideanomics.

17. Ideanomics defaulted on its obligations to Plaintiff. As of December 21, 2023, Ideanomics was indebted to Plaintiff in the amount of approximately $7,601,845, plus per diem interest thereafter of $1,491.51, plus attorneys' fees and expenses and other costs of collection,

plus such other amounts as are required under the governing Security Agreements. All of these amounts are secured by substantially all of the assets of Ideanomics.

## DEFENDANTS' TORTIOUS ACTS

18. Osirius is an automotive production consultant. Relevant to this case, non-party Via Motors, Inc. ("Via Motors") hired Osirius for services, and Via Motors failed to pay Osirius for the services rendered.

19. On May 2, 2022, Osirius and Ideanomics entered into a Consulting Agreement, wherein Osirius agreed to perform certain consulting services to Ideanomics. The Consulting Agreement is attached hereto as **Exhibit 2**.

20. Like the Security Agreements, the Consulting Agreement contains a Governing Law provision centering disputes in the State of New York.

21. Ideanomics acquired Via Motors on or about January 26, 2023 and assumed Via Motors' obligations to Osirius.

22. On March 21, 2023, Osirius sent correspondence to Ideanomics in New York and demanded that Ideanomics satisfy its remaining debt obligation to Osirius. Osirius's March 21, 2023 Demand Letter is attached hereto as **Exhibit 3**.

23. On April 22, 2023, Osirius commenced the Ideanomics Action against Ideanomics, in which Osirius alleged that Ideanomics defaulted on its obligations to Osirius.

24. Osirius had an obligation to notify Plaintiff of the Ideanomics Action because filings evidencing Plaintiff's senior security interest are public and Ideanomics is a publicly traded company, such that SEC filings show Plaintiff as the senior secured lender, but Osirius did not.

25. Osirius received a default judgment against Ideanomics on August 22, 2023 in the Ideanomics Action.

26. At this point, Osirius purposefully continued to keep Plaintiff in the dark regarding the Ideanomics Action.

27. On September 25, 2023, Mr. Gleeson sent a cryptic and non-descriptive email to Plaintiff's general email address (legal@yorkvilleadvisors.com) with the subject line entitled "Ideanomics" and the entire contents of the email reading: "I am trying to reach attorney David Fine. If he could contact me at his convenience, I would appreciate it. Thanks. Gerry Gleeson." The September 25, 2023 Email is attached hereto as **Exhibit 4**.

28. The September 25th email does not contain (i) a signature block for Mr. Gleeson, (ii) any indication who Mr. Gleeson is, (iii) who Mr. Gleeson represents (or even that Mr. Gleeson is an attorney), (iv) why Mr. Gleeson sought to speak to Mr. David Fine, (v) the existence of the Ideanomics Action, or (vi) any hint that Osirius or Miller Canfield were attempting to levy upon the Assets, or that Mr. Gleeson's email otherwise involved Plaintiff's interests.

29. Simply put, Mr. Gleeson's email did not come close to anything resembling proper notice of the Ideanomics Action to Plaintiff but rather, for all intents and purposes, was spam.

30. Neither Mr. Gleeson (or Miller Canfield) nor Osirius made any further attempts to contact Plaintiff regarding the Ideanomics Action.

31. Four days later, on September 29, 2023, Mr. Gleeson conducted the remote deposition ("Creditor's Examination") of Scott Morrison, Chief Financial Officer of Ideanomics. The Creditor's Examination Transcript is attached hereto as **Exhibit 5**.

32. Plaintiff's name (Yorkville Advisors) is mentioned no less than fifteen (15) times during the Creditor's Examination. Ex. 3 at 11, 13, 17-20, 45.

33. During the Creditor's Examination, Mr. Morrison expressly answered Mr. Gleeson's questions about Plaintiff's secured interests in Ideanomics, stating "the outstanding debt we have to Yorkville is the 6.6 million." Ex. 5 at 20:12-19.

34. Rather than inform the Ideanomics Court of Plaintiff's senior lienholder status in the Assets, Miller Canfield knowingly disregarded its RPC 3.3 obligation and instead issued garnishments, obtained an injunction to sell Ideanomics' Assets to pay the proceeds from the sales to Osirius, and Osirius received an Order appointing a receiver to oversee Ideanomics' payment to Osirius—all without notice to or an opportunity to be heard by Plaintiff. *See, e.g.*, *Harrison v. Konfino*, 616 B.R. 295, 303 (Bankr. S.D.N.Y. 2020) ("One UCC requirement with regard to the disposition of collateral after a default is that notice must be given to any other secured creditor who has perfected an interest in the collateral by the filing of a financing statement. The purpose of such notice is to enable a senior secured creditor to assert its own rights to take possession of the collateral from the junior secured creditor, and to permit the senior secured creditor to control the disposition of the collateral."). Miller Canfield's purposeful actions in this regard amounted to a fraud on the Ideanomics Court.

35. Defendants had legal and ethical obligations to notify Plaintiff, as the senior secured creditor (in addition to the Ideanomics Court), to permit Plaintiff to assert its senior lienholder rights in the Assets. Instead, Osirius consciously sought to convert the Assets—depriving Plaintiff of its rights thereto, without so much as giving Plaintiff proper notice and an opportunity to assert its rights in the Assets—and Miller Canfield assisted Osirius's conversion of the Assets.

36. On October 27, 2023, Miller Canfield and Mr. Gleeson knowingly facilitated—to the intentional deprivation of Plaintiff's senior lienholder rights—the execution of a *Stipulated Order Allowing Transfer of Funds to Partially Satisfy Judgment* between Osirius and Ideanomics. The Ideanomics Court entered the Stipulated Order that same day. Pursuant to the October 27th Stipulated Order, Ideanomics transferred $800,000 of Assets to Osirius. Ideanomics Action, ECF No. 59.

37. Notably, despite Miller Canfield's actual knowledge of Plaintiff's first-priority senior rights in the Assets, Miller Canfield failed to disclose same to the Ideanomics Court.

38. And again, on October 31, 2023, the Ideanomics Court entered a separate *Stipulated Order Allowing Sale and Transfer of Funds to Satisfy Judgment*—again without any notice to Plaintiff or opportunity to be heard—wherein Osirius and Ideanomics stipulated that Ideanomics "may: a) sell its subsidiary U.S. Hybrid, b) receive the proceeds of the sale and c) transfer $2,000,000.00 of the sale proceeds to [Osirius] via wire transfer." Ideanomics Action, ECF No. 60.

39. Pursuant to the Security Agreements, however, Plaintiff has first-priority liens on U.S. Hybrid's assets and a pledge of the stock of U.S. Hybrid held by Ideanomics.

40. On November 7, 2023, Ideanomics received a $500,000 deposit from the purchaser of U.S. Hybrid and wired that money to Osirius the same day. Ideanomics Action, ECF No. 72 ¶ 4.

41. Upon information and belief, Osirius received an additional $2.6 million in stock from Ideanomics and may be seeking to double-dip (i.e., collecting on debts already paid).[1]

---

[1] Plaintiff expressly reserves the right to amend its Complaint upon confirmation of this fact.

42. At all relevant times, Plaintiff has been, and remains, the senior secured lienholder of the Assets and should have been notified of and given an opportunity to be heard on all of the above matters affecting its collateral.

43. Plaintiff filed an *Emergency Motion to Intervene* in the Ideanomics Action, in response to which Osirius acknowledged Plaintiff's senior security interests in the Assets. *See* Ideanomics Action, ECF Nos. 62 & 64 ("Osirius does not contest that [YA] has a senior, security interest").

44. In or about early-December 2023, Plaintiff's counsel in the Ideanomics Action proposed to Defendants an arrangement whereby, after the sale of US Hybrid, the money that Osirius sought from the proceeds (in contravention of Plaintiff's rights) would be escrowed, and the balance—to which Osirius had no right or claim would be disbursed to Plaintiff. Osirius flatly refused, even though it would have suffered no harm and it would have resulted in the sale of US Hybrid to timely proceed. Instead, Osirius, with the assistance of Miller Canfield, sought to deprive Plaintiff of all proceeds from the sale of US Hybrid, including the portion that was not even the subject of the wrongful injunction. In so doing, Osirius and Miller Canfield sought a wrongful advantage to pressure Plaintiff to give up its lawful rights to the collateral or risk the loss or reduction in the purchase price or net proceeds from the sale of US Hybrid. In fact, Osirius's and Miller Canfield's wrongful conduct and associated delays resulted in the reduction in the net proceeds from the sale of US Hybrid by approximately $750,000.

45. In a thinly veiled effort to maliciously harm Plaintiff without justification, Osirius apparently hoped to control <u>all</u> sale proceeds from the US Hybrid sale—notwithstanding the fact that Osirius has no legal claim whatsoever (especially as an unsecured creditor) to any dollar of such sale proceeds after Ideanomics' debt obligation to Osirius is paid in full. In other words,

Defendants have intentionally sought to disregard Plaintiff's senior secured rights each step of the way.

46. On December 19, 2023, Plaintiff sent correspondence to Osirius, again seeking its cooperation regarding the proper disposition of Ideanomics' Assets, but Osirius has refused to engage with Plaintiff in good faith in such discussions. The December 19, 2023 Demand Letter is attached hereto as **Exhibit 6**.

47. Under its agreements with Plaintiff, Ideanomics was obligated to inform Osirius that Plaintiff is the first senior secured lender, and only belatedly did so.

48. Plaintiff's security interests in Ideanomics' Assets are publicly available in UCC filings and public SEC filings. Osirius had a duty to immediately notify the Ideanomics Court of Plaintiff's superior interests in the Assets that it had wrongly requested the court to direct to it.

49. Mr. Gleeson and Miller Canfield additionally had an ethical obligation to notify the Ideanomics Court of Plaintiff's superior interests in the Assets, but did not do so, and instead knowingly facilitated the wrongful transfer of approximately $1.3 million of Ideanomics' Assets to Osirius, to the exclusion and determine of Plaintiff's senior lienholder rights, amounting to a fraud on the court.

50. The distribution of the $1,300,000 of proceeds, in addition to any proceeds from the sale of any other Assets to Osirius, would be wrongful, impair the value of the Assets, and would violate Plaintiff's rights as a senior lienholder in these Assets and proceeds (until Plaintiff has been paid in full).

51. Plaintiff attempted to engaged in discussions to amicably resolve this matter, but Osirius's bad faith refusal to reciprocate damaged Plaintiff and jeopardized the value of its collateral, including the sale of US Hybrid (which, due to Defendants' improper actions, resulted

in a reduction in the net proceeds from the sale of US Hybrid by approximately $750,000), thus prompting Plaintiff to commence this litigation as a last resort to pursue its rights and remedies.

## COUNT ONE
### (Conversion – against Osirius)

52. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

53. Plaintiff has a valid and recognizable property interest in the Assets.

54. At all relevant times, Osirius knew of Plaintiff's property interest in the Assets.

55. Osirius converted the Assets to its own use by misappropriating the Assets and seizing the proceeds despite knowledge of Plaintiff's valid and perfected senior liens in the Assets.

56. Osirius wrongfully exercised dominion over the Assets in a manner that was in denial and inconsistent with Plaintiff's rights in the Assets.

57. Plaintiff requested that Osirius allow Plaintiff to control the disposition of the Assets in which Plaintiff holds undisputed senior security interests, but Osirius has refused.

58. As a result of Osirius's conversion of the Assets, Plaintiff has suffered actual damages.

59. By reason of the foregoing, Plaintiff has sustained damages in an amount to be determined at trial believed to be not less than $2,050,000.

## COUNT TWO
### (Tortious Interference with Contract – against both Defendants)

60. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

61. Osirius tortiously interfered with Ideanomics' performance under the Security Agreements between Plaintiff and Ideanomics.

62. The Security Agreements between Plaintiff and Ideanomics constitute valid, binding contracts.

63. Osirius was aware of the Security Agreements between Plaintiff and Ideanomics.

64. Miller Canfield, at minimum, gained awareness of the Security Agreements after the Creditor's Examination.

65. Despite Osirius's knowledge of the Security Agreements, Osirius intentionally procured Ideanomics' breach of the Security Agreements, which governed the proper disposition of the Assets.

66. Ideanomics unequivocally breached the Security Agreements in improperly transferring Assets to Osirius in the face of Plaintiff's perfected first-priority senior secured interests.

67. Miller Canfield, acting outside the legal and ethical scope of its duties as counsel to Osirius, assisted Osirius in tortiously interfering with Plaintiff's contractual rights, and by perpetuating a fraud on the Ideanomics Court in doing so.

68. The "Governing Law" provisions of the Security Agreements all provide that the rights and obligations of the parties shall be governed by the laws of the State of New York.

69. The "Jurisdiction" and "Venue" provisions of the Security Agreements all provide that any suit, claim, action, litigation, or proceeding arising out of or based upon the Security Agreements shall be brought in a court only in the "Governing Jurisdiction," i.e., in the State of New York.

70. Osirius intentionally misappropriated the Assets and seized the proceeds in a manner inconsistent with the Security Agreements between Plaintiff and Ideanomics.

71. These actions were undertaken with improper purpose, wrongful means, and/or in bad faith, and with Osirius betting on its default judgment against Ideanomics and resulting ability to obtain court Orders to sell the Assets and take the proceeds from such sales—without opposition from Ideanomics or notice or an opportunity to be heard by Plaintiff.

72. As a result of the aforementioned actions of tortious interference, Plaintiff has suffered actual damages and will continue to suffer damages, including but not limited to financial losses, impairment of collateral, loss of good will, lost business venture, lost profits, incidental damages, and consequential damages.

73. By reason of the foregoing, Plaintiff has sustained damages in an amount to be determined at trial believed to be not less than $2,050,000.

## COUNT THREE
**(Tortious Interference with Prospective Economic Advantage – against both Defendants)**

74. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

75. At all relevant times, Plaintiff had, and has, an ongoing advantageous business relationship with Ideanomics.

76. At all relevant times, Osirius knew of Plaintiff's advantageous business relationship and reasonable business expectations that it had, and has, with Ideanomics, and Osirius unjustifiably interfered with Plaintiff's advantageous business relationship and reasonable business expectations.

77. Osirius intentionally, purposefully, and improperly interfered with the advantageous business relationship and reasonable business expectations between Plaintiff and Ideanomics by its acts, omissions, and/or commissions as described above.

78. Osirius perpetuated these intentional, purposeful, and improper acts of interference to facilitate the conversion and misappropriation of the sale proceeds of the Assets in which Plaintiff holds senior security interests.

79. Miller Canfield, acting outside the legal and ethical scope of its duties as counsel to Osirius, assisted Osirius in tortiously interfering with Plaintiff's prospective economic advantage, and by perpetuating a fraud on the Ideanomics Court in doing so.

80. As a direct and proximate result of the aforementioned acts of tortious interference, Plaintiff has suffered actual damages and will continue to suffer damages, including but not limited to financial losses, impairment of collateral, loss of good will, lost business revenue, lost profits, incidental damages, and consequential damages.

81. By reason of the foregoing, Plaintiff has sustained damages in an amount to be determined at trial believed to be not less than $2,050,000.

## COUNT FOUR
### (Aiding and Abetting Conversion – against Miller Canfield)

82. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

83. By no later than the September 29, 2023 Creditor's Examination, Miller Canfield and Mr. Gleeson learned that Plaintiff possessed a senior lien on Ideanomics' Actions.

84. Rather than inform the Ideanomics Court, Miller Canfield and Mr. Gleeson quickly moved—within the following month—to knowingly facilitate the unauthorized dominion over Ideanomics' Assets, to the exclusion of Plaintiff's senior rights.

85. Miller Canfield and Mr. Gleeson had actual knowledge of Plaintiff's superior rights in the Assets, yet they substantially assisted Osirius in converting the Assets, including by failing to expressly alert Plaintiff regarding Ideanomics' transfers to Osirius within the Ideanomics Action, notwithstanding legal and ethical obligations to do so. In other words, Miller Canfield's and Mr. Gleeson's actions were outside the scope of their legal duties as counsel for Osirius, were purposeful, and were undertaken in bad faith.

86. As a result of Miller Canfield's and Mr. Gleeson's aiding and abetting the conversion of the Assets, Plaintiff has been damaged in an amount to be determined at trial, but not less than $2,050,000.

## COUNT FIVE
### (Unjust Enrichment – against both Defendants)

87. Plaintiff repeats and realleges the allegations contained in the preceding paragraphs as if fully set forth herein.

88. Defendants' wrongful actions taken against Plaintiff's perfected first-priority senior secured interest in the Assets have given Defendants improper benefits in, and related to, the Assets.

89. As a result, Defendants have been unjustly enriched by their wrongful conduct and at the direct expense of Plaintiff, which has been damaged as a direct and proximate result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter an Order:

a) Awarding Plaintiff damages for Osirius's conversion of the Assets in knowing violation of Plaintiff's perfected first-priority senior lienholder secured interest in the

Assets, including without limitation reimbursement of Plaintiff's reasonable attorneys' fees, costs, and expenses;

b) Awarding Plaintiff damages for Defendants' tortious interference with the Security Agreements;

c) Awarding Plaintiff damages for Defendants' tortious interference with Plaintiff's prospective economic advantage with Ideanomics;

d) Awarding Plaintiff the return of all transferred Assets received by Osirius from Ideanomics under which Plaintiff holds valid and enforceable senior security interests;

e) Award Plaintiff pre-judgment and post-judgment;

f) Award Plaintiff its costs of suit and reasonable attorneys' fees incurred in this action; and

g) Granting such other and further relief as the Court may deem just and proper.

Dated: January 23, 2024

Respectfully submitted,

*/s/ Michael A. Conforti*
Peter J. Frazza, Esq. (*pro hac vice* forthcoming)
Michael A. Conforti, Esq.
**GIBBONS P.C.**
1 Pennsylvania Plaza
Floor 45, Suite 4515
New York, New York 10119
(212) 613-2000
pfrazza@gibbonslaw.com
mconforti@gibbonslaw.com
*Attorneys for Plaintiff*
*YA II PN, Ltd.*